IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE:                            :     CIVIL ACTION
PHILADELPHIA NEWSPAPERS, LLC      :     NO. 09-2638
                                  :
                                  :     BKY. NO. 09-11204
                                  :

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                              JULY 2, 2009

        This is an appeal from the order of the Bankruptcy
Court enjoining for sixty days a state court lawsuit against Non-
Debtors.  The appeal presents three issues: (1) Did the
Bankruptcy Court have jurisdiction to issue the injunction; (2)
Did the Bankruptcy Court properly extend the 11 U.S.C. § 362(a)
stay to Non-Debtors; and (3) Did the Bankruptcy Court properly
issue an injunction, pursuant to 11 U.S.C. § 105(a).

        The Court holds the Bankruptcy Court did have
jurisdiction to issue an injunction enjoining a pending state
action against Non-Debtors, that under the circumstances, it was
appropriate to extend the protection of the section 362(a) stay
to the Non-Debtors, and that the Bankruptcy Court properly
exercised its discretion in issuing the injunction.  For the
reasons that follow, the decision of the Bankruptcy Court will be
affirmed.

1

I.   BACKGROUND

          Philadelphia Newspapers, LLC and its related entities
(the "Debtors")[1] filed a voluntary petition for relief under
Chapter 11 of Title 11 of the United States Bankruptcy Code on
February 22, 2009.  At that time, Philadelphia Newspapers, LLC
was a defendant in several non-bankruptcy litigation matters.  By
filing its bankruptcy petition, Philadelphia Newspapers triggered
the automatic stay under section § 362(a), thereby halting the
continuation of suits against Philadelphia Newspapers.

          Several Non-Debtors (including the Debtors' holding
company - Philadelphia Media Holdings, LCC ("PMH"),[2] Brian
Tierney - the Debtors' CEO and publisher of The Philadelphia
Inquirer, and certain reporters - editors or other employees of
the Debtors) were named as defendants in some of these suits.

          One such suit was the civil action filed on or about
January 6, 2009, by Vahan H. Gureghian, Danielle Gureghian, and
Charter School Management, Inc. ("CSMI") (collectively, the

_____

          [1]    Throughout this memorandum, the Court will refer to the
Philadelphia Newspapers, LLC and its related entities as the
"Debtors" and "Appellees" interchangeably, dependent upon the
context.

          [2]    PMH was not a Debtor at the time the Motion for
Preliminary Injunction was filed.  PMH filed for bankruptcy on
June 10, 2009.  Because PMH is now a Debtor, actions against it
are automatically stayed under section 362(a), and it is no
longer included as a Non-Debtor, subject to the May 8, 2009
order.  On June 26, 2009, the Debtors filed a Motion for Leave to
file a Third Amended Complaint that will reflect this change.

"Appellants") against several Non-Debtors, including, Philadelphia Media Holdings, LLC, The Philadelphia Inquirer, and Brian Tierney.  In this action, the Appellants seek damages arising from a series of allegedly false and misleading newspaper and internet articles published by The Philadelphia Inquirer about the Appellants.[3]

On March 23, 2009, the Debtors initiated an adversary proceeding, seeking an extension of the automatic stay under section 362(a), and filed a motion for injunctive relief under section 105(a) to enjoin Defendants, including the Appellants, named in the injunction complaint from asserting claims or otherwise attempting to exercise remedies in state court litigation against certain Non-Debtors, including: (i) PMH; (ii) Brian Tierney; and (iii) certain reporters, editors, or employees of the Debtors (collectively, the "Non-Debtors").

On May 8, 2009, following an evidentiary hearing on this motion, the Bankruptcy Court granted the Debtors' motion for

---

[3]    Specifically, the Appellants assert that as the Philadelphia Newspapers business enterprise deteriorated, Tierney and PMH approached Vahan Gureghian about the possibility of joint ventures between CSMI and Philadelphia Newspapers.  During these discussions, the Appellants contend that Tierney became aware of hostility of certain school districts towards CSMI, allegedly arising from CSMI's comparatively high success rates.  When the business discussions between Tierney and Gureghian failed, the Appellants aver that Tierney published a series of articles about CSMI which purposefully focused on hostility of school district toward CSMI and ignored CSMI's positive achievements.

a preliminary injunction and extended the protection of the section 362(a) stay to the Non-Debtors for sixty days.  On May 18, 2009, the Appellants filed a notice of appeal of the May 8, 2009 Bankruptcy Court decision.  The Court set an expedited briefing schedule and held a hearing on July 1, 2009.  This decision follows.

## II.  DISCUSSION

The Bankruptcy Court's issuance of the preliminary injunction is reviewed for abuse of discretion.  In re Pillowtex, Inc., 304 F.3d 246, 250 (3d Cir. 2002).  "An abuse of discretion exists where the district court's decision rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact."  In re Marvel Entm't, 140 F.3d 463, 470 (3d Cir. 1998).

In evaluating the issuance of the preliminary injunction extending the protection of section 362(a) to Non-Debtor third parties, the Court will undertake a three-step analysis.[4]  The Court will determine, first, whether the

---

[4]     The Bankruptcy Court recognized the necessity for this type of sequential analysis, albeit in a slightly different form. May 7, 2009, Hr'g Tr. 97:12-18 ("[t]he task allotted to me today is to make a determination under two different tests.  One is the general test for the issuance of a preliminary injunction.  The other is the test that is required to extend the automatic stay beyond the scope of its normal reach and to cover parties who are not, otherwise, entitled to it by operation of the Bankruptcy

Bankruptcy Court had jurisdiction to issue the injunction. Second, whether the Bankruptcy Court properly extended the section 362(a) stay to the Non-Debtors.  Finally, whether the Bankruptcy Court properly exercised its discretion in issuing an injunction, pursuant to section 105(a), enjoining suit against Non-Debtors.

Courts have often conflated the analysis.  This has led to confusion.  See, e.g., A.H. Robins Co., Inc. v. Piccinin, 788 F.2d 994 (4th Cir. 1986) (using "stay" and "injunction" interchangeably and pointing out that the bankruptcy court may enjoin lawsuits under section 362(a), section 105(a) or its inherent power); Stanford v. Foamex L.P., No. 07-4225, 2009 U.S. Dist. LEXIS 32045, at *8 n.7 (E.D. Pa. April 15, 2009) (concluding that "the practical effect" of the difference between extending the section 362(a) stay to non-debtors, or issuing a separate injunction pursuant to the bankruptcy court's power under section 105(a) is "academic"); In re Loewen Group, Inc., No. 98-6740, 2001 U.S. Dist. LEXIS 6482 (E.D. Pa. May 16, 2001) (placing the case against the non-debtors in suspense without reliance on either section 362(a) or section 105(a)); Smith v. Dominion Bridge Corp., No. 96-7580, 1999 U.S. Dist. LEXIS 2131, at *11 n.3 (E.D. Pa. Mar. 2, 1999) (pointing out there is no need

───────────────────

Code").

to satisfy requests for injunctive relief in order to obtain stay); <u>In re Monroe Well Service, Inc.</u>, 67 B.R. 746, 751 (Bankr. E.D. Pa. 1986) (granting an injunction under section 105(a), without discussion of section 362(a)).

Although the facts necessary to support the Court's determination at each step of the analysis may overlap, each step of the inquiry is distinct, independently necessary, and implicates different interests.  Mere incantation to the power of the Court to issue injunctions under section 105(a) is insufficient.  For, as the statute itself makes clear, section 105(a) is neither an independent source of federal subject matter jurisdiction, <u>see</u> <u>In re Combustion Eng'g, Inc.</u>, 391 F.3d 190, 224-25 (3d Cir. 2004), nor the repository of any substantive rights.  Section 105(a) permits a bankruptcy court to "issue an order, process, or judgment that is necessary or appropriate to carry out the provisions [of the Bankruptcy Code]."  Therefore, unless the Debtors can satisfy all three steps of the inquiry, an injunction should not issue.

A. <u>Jurisdiction</u>

In order to enjoin the Appellants from prosecuting litigation against the Non-Debtors, the Bankruptcy Court was required to conclude that it had jurisdiction over the claims of the Appellants against the Non-Debtors.  <u>See</u> <u>In re Combustion</u>, 391 F.3d at 224-25 (to enjoin litigation against third parties, a

-6-

bankruptcy court must have subject matter jurisdiction over such litigation).

Pursuant to 28 U.S.C. § 1334(b), bankruptcy courts have subject matter jurisdiction over four types of Bankruptcy Code matters and proceedings: (1) cases under the Bankruptcy Code; (2) proceedings which "arise under" the Bankruptcy Code; (3) those which "arise in" a case under the Bankruptcy Code; and (4) those which "relate to" a proceeding under the Bankruptcy Code.  Id. at 225-26.  Here, the Bankruptcy Court determined that it had jurisdiction over the state court proceeding because the matter "related to" the underlying bankruptcy.

A proceeding is "related to" a bankruptcy case if "the outcome of the proceeding could conceivably have any effect on the estate being administered in bankruptcy."  Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984).  The Pacor Court further explained, "an action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankruptcy estate."  Id.

The Appellants argue that the state court action is not "related to" the bankruptcy case because, despite the Appellees' contentions, the indemnity provision contained in the Operating Agreement ("the Agreement") is not triggered, and thus the

Debtors are not obligated to defend/indemnify the Non-Debtors in the instant lawsuit.  The Appellees argue that the indemnity provision in the Agreement is in fact triggered.[5]  In addition, the Appellees contend that the "relation to" inquiry is broader than the contractual indemnification issue and assert that the state court action is related to the bankruptcy because its outcome would impact the Debtors' reorganization efforts and the value of their assets.  The Court will address these contentions ad seriatim.

    1.  Indemnification

    The Appellants highlight the distinction between common law indemnity and contractual indemnity, as applied to the jurisdictional analysis.  It is true that a bare claim of common law indemnity is insufficient to satisfy the "related to" provision.  <u>Pacor</u>, 743 F.2d at 994.  However, a contractual indemnity right against the Debtor will satisfy the "related to"

---

[5]  Importantly, the Appellees note that contractual indemnity is not the sole reason that the state action is "related to" the bankruptcy proceeding.  The Appellees submit the following additional bases to support the state court proceeding's relation to the underlying bankruptcy: (1) impact on the Debtors' ability to engage in effective reorganization efforts; (2) historical indemnification/indemnification in practice; (3) Debtors' employees and Tierney are additional insureds under the Debtors' various insurance policies; under these various insurance policies, the Appellees contend that there are retention (or deductible) levels which need to be exhausted before coverage is triggered.

provision.  Id. at 995.[6]

The Appellants point to the Agreement governing the relationship of the Philadelphia Newspapers and its members, managers, and officers, and argue that there is no provision which contractually requires indemnification of the Non-Debtors. Two provisions of the Agreement are implicated: (1) the indemnification clause at Section 8(a); and (2) the third party beneficiary clause at Section 10.

The indemnification provision at section 8(a) is as follows:

Indemnification.  To the full extent permitted by the laws of the Commonwealth of Pennsylvania, as they exist on the date hereof or as they may hereafter be amended, the **Company will indemnify any person who is or was (at any time after the Acquisition Date) a Member, Manager, officer, employee, or other agent of the Company, or the legal representative of any such Member, manager, officer, employee or agent (an "Indemnitee"), from and against any and all claims, demands and expenses (including, without limitation, attorneys' fees, judgments,** fines penalties, excise taxes and amounts paid in settlement) incurred by the Indemnitee **by reason of the fact that such a person was a Member or Manager** or, while serving as a Member or Manager, is or was at the request of the Company also serving as a

---

[6]    This premise articulated in Pacor was technically dictum because the Third Circuit found no "related to" bankruptcy jurisdiction on the facts in Pacor.  However, appellate courts applying Pacor recognize that "the clear implication of the decision is that, if there had been a contract to indemnify, a contrary result would have been in order."  In re: Federal Mogul Global, Inc., 282 B.R. 301, 310-311 (Bank. D. Del. 2002) (citing A.H. Robins, 788 F.2d at 1001).

manager, director, employee, officer, or agent of
another entity (including, without limitation, any
employee benefit plan).

The third party beneficiary provision at section 10 is
as follows:

<u>Third Party Beneficiaries.</u>  None of the provisions of
this agreement will be for the benefit of or
enforceable by any third party, including creditors of
the company.

First, the Appellants argue that although Tierney, as
the CEO of Philadelphia Newspapers, is covered under the
indemnification clause, his personal "bad acts" were committed
outside of his managerial role and thus remove his action from
the realm of coverage.  Second, reading the indemnification and
third party beneficiaries clauses in tandem, the Appellants argue
that the Appellees are not contractually bound to indemnify the
employees because the employees are not "managers or members" and
are not beneficiaries of the Agreement, as prohibited by the
third party beneficiary clause.[7]

---

[7]   Notably, the Appellants highlight that even if
indemnification did apply, the Non-Debtors are not entitled to
any such payment in the absence of a repayment agreement.
Pursuant to the "Advancement of Expenses" clause, at section
8(c), "Under such conditions as it deems appropriate, **the Company
may pay the expenses incurred by an Indemnitee in defending any
civil**, criminal, administrative or investigative action, suit or
proceeding, **but only upon prior receipt of a written undertaking
by or on behalf of such Indemnitee to repay all of such advances
if it shall ultimately be determined that the Indemnitee is not
entitled to such indemnification.**"

According to the Appellants, because the Non-Debtors are not protected by contractual indemnification, the only obligation to indemnify the Non-Debtors in the state court action is through common law indemnity, an insufficient ground to satisfy "related to" jurisdiction.

In contrast, the Appellees argue that the indemnity clause does trigger contractual indemnity. First, the Appellees argue that pursuant to the indemnification clause, Tierney is covered as he is the "sole manager and member of the Appellee/Debtor." In response to the Appellants' argument that Tierney's "bad acts," as alleged in the state court complaint, were committed on some personal basis, outside the scope of his management role, the Appellees submit even if this were the case, the indemnification clause does not limit its applicability to exclude coverage for such actions. Second, the Appellees concede that while the employees are not specifically covered on the face of the Agreement, it is historic practice to defend/indemnify employees in suits arising under employment with the Philadelphia Newspapers.

--------

Here, Tierney did not initiate a repayment agreement and thus the Appellants argue that the indemnification clause was not triggered. In response, the Appellees submit that the repayment agreement provision is for the benefit of the Debtors and thus subject to wavier by the Debtors. The Court need not reach this issue because it does not determine at this time whether contractual indemnification is implicated on these facts.

The Court will not construe the indemnification clause
of the Agreement on this conflicting record.  Given the limited
testimony and airing of the issues at the hearing below, it is
premature to do so.  Therefore, the Court will proceed to
determine whether there are alternative bases sufficient to
support jurisdiction in the absence of contractual
indemnification.

        2.  Other bases for jurisdiction

As detailed above, the Appellees also argue that the
action is "related to" the bankruptcy proceeding for the
following reasons, in addition to potential contractual
indemnity: (1) impact on the Debtors' ability to engage in
reorganization efforts; and (2) the Debtors' historical practice
of indemnification.[8]

First, as to the impact on the Debtors' ability to
engage in reorganization efforts, continuation of the state court
actions against the Non-Debtors would require the involvement of
key personnel of the Debtors.  At the hearing, Philadelphia

---

[8]   In addition, the Appellees' contend that the Debtors
employees' and Tierney are additional insureds under the Debtors'
various insurance policies.  The Appellees note that these
insurance policies have significant self-insured retentions or
deductibles that must be exhausted prior to the insurer becoming
liable to cover any costs associated with claims against the
Debtors' employees or Tierney.  The Appellees submit that, should
the litigation against the Non-Debtors continue, the Appellees
would be obligated to pay such deductibles.

Newspapers in-house counsel, Scott Baker, Esquire, testified that

he currently spends "upwards of 80 percent of [his] time on

restructuring efforts."  May 7, 2009, Hr'g Tr. 25:18-19.  Baker

also testified that the litigation of Non-Debtor suits would

distract him from reorganization efforts.  Id. at 33:22-24.

Prior to the filing the petition, Baker supervised all the

litigation efforts of the Debtor.[9]  In addition, Philadelphia

Newspapers' CEO, Brian Tierney, testified that he is "working

aggressively" to "lead the effort" to develop the reorganization

plan, which "is a full-time job on its own."  Id. at 60:20-23.

Tierney noted that he prepared for and was deposed for three days

in connection with the state actions against Non-Debtors; he

opined that such depositions created distractions from the

reorganization process.  Id. at 61:20-23.

Under these circumstances, diverting the time and

energy of key personnel from the reorganization effort at a

critical time in the formulation of a plan would adversely impact

the Debtors' ability to promptly and effectively reorganize.

Second, the Appellees' identified several bases

---

[9]     Baker explained his supervisory role, with respect to
litigation, as follows: "[a]t the outset, the initial stages of
the cases, we . . . prepare and disseminate document retention
memorandums.  I also review all pleadings, discovery requests,
motions, et cetera, and depending on the case, may be involved in
the . . . preparation of witnesses."  May 7, 2009, Hr'g Tr.
21:16-20.

substantiating its obligation to defend and indemnify the Non-Debtors, even in the absence of contractual indemnity.  The Appellees highlight several common law theories[10] which would make the Appellees liable for any judgment against the Non-Debtors, including: respondeat superior, vicarious liability, and principal/agent theories.

Third, as the Bankruptcy Court emphasized, if the suit against the Non-Debtors proceeded without the involvement of the Appellees, the Appellees may be later barred from defending these claims by operation of collateral estoppel.[11]

---

[10]  Although common law indemnification would not supply an independent basis for jurisdiction, see Pacor, 743 F.2d at 994, it may be appropriately considered in determining whether it provides a basis upon which the Debtors may be held obligated to Non-Debtors under these theories.

[11]  The term "issue preclusion" is used to refer to the traditional doctrine of collateral estoppel.  See United States v. Athlone Indus., Inc., 746 F.2d 977, 983 n.4 (3d Cir. 1984) (equating issue preclusion with collateral estoppel or "the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided").  Under the doctrine of issue preclusion, a party is barred from "relitigating a matter that has been litigated and decided." Athlone, 746 F.2d at 983 n.4; see also Purter v. Heckler, 771 F.2d 682, 690 n.5 (3d Cir. 1985) (noting that issue preclusion "was intended to be a more narrow application of res judicata").  Issue preclusion applies where (1) the issue decided in the previous action is identical to the one presented in the later action, (2) the previous action resulted in a final judgment on the merits, (3) the party against whom collateral estoppel is asserted was either a party to the previous action, or is in privity with a party to the previous action, and (4) the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the previous action.  See Jones v. United Parcel Service, 214

Finally, even if the Appellees do not have a common law duty or contractual obligation to indemnify its employees, the Appellees have represented that, in the past, as a matter of general practice, the Appellees have provided indemnification and defense to its employees.[12]  Given its past practice, it appears likely that Appellees would be obligated to do so in this case.

The Court finds that the Appellees have sufficiently demonstrated that the state action is "related to" the underlying bankruptcy proceeding.  Therefore, the Bankruptcy Court properly exercised jurisdiction in the instant action.

B.  Entitlement to Extension of Section 362(a) Stay

The second step involves a determination of whether the

_____

F.3d 402, 405 (3d Cir. 2000).

Here, the Appellees are named as a party in the state court complaint and are in privity with the Non-Debtors. Accordingly, it may well be that issue preclusion could operate to bar the Appellees from raising/defending issues which were previously litigated in the suit versus the Non-Debtors.  See, e.g., In re Am. Film Techs., Inc., 175 B.R. 847, 855 (Bankr. D. Del. 1994) (extending automatic stay to third-parties when breach of contract action against former and present directors could trigger the debtor employer's indemnification obligations and expose it to collateral estoppel [issue preclusion] prejudice if it does not participate in the case).

[12]    In support of this notion, the Appellees highlight that the Philadelphia Newspapers in-house counsel, Scott Baker, testified that "we'd [Philadelphia Newspapers] have a very difficult time keeping our reporters on staff if we did not provide indemnification or defense costs to them."  May 7, 2009, Hr'g Tr. 53:19-21.

Bankruptcy Court properly extended the section 362(a) stay to Non-Debtors.  Section 362(a)(1) operates as a stay "applicable to all entities," of the "commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title."  The automatic stays serves to give the debtor a "breathing spell" from creditors by stopping all collection efforts and foreclosure actions, and permits the debtor to attempt a repayment or reorganization plan.  McCartney v. Integra National Bank North, 106 F.3d 506, 509 (3d Cir. 1997) (citing Maritime Elec. Co., Inc. v. United Jersey Bank, 959 F.3d 1194, 1204 (3d Cir. 1991)).

        While the scope of the automatic stay is broad, it stays action only against the "debtor," and does not extend to protect "sureties, guarantors, co-obligors, or others with a similar legal of factual nexus to the . . . debtors."  Id. (quoting Maritime Elec. Co., 959 F.2d at 1205).  However, where "unusual circumstances" are present, courts have extended the stay to non-debtor third parties.  Id.  (citing A.H. Robins, 788 F.2d at 999).  Such unusual circumstances may be found, at least, where: (i) the non-debtor and debtor enjoy such an identity of

-16-

interests that the suit of the non-debtor is essentially a suit against the debtor; or (ii) the third-party action will have an adverse impact on the debtor's ability to accomplish reorganization.  Id.; accord In re Loewen Group Inc., No. 98-6740, 2001 U.S. Dist. 6482, at *3-4 (E.D. Pa. 2001).[13]

Here, the "unusual circumstances" to warrant the extension of the section 362(a) stay are present.  As detailed above, (1) because the Debtors owe potential contractual and common law duties to indemnify the Non-Debtors, the interests of the Debtors and Non-Debtors in the state action are identical, and (2) the diversion of resources caused by the state action against the Non-Debtors will impact the Debtors' ability to engage in timely and effective reorganization.

Under the McCartney analysis and given that "unusual circumstances" are present, the extension of section 362(a) stay to the Non-Debtors is warranted.

C.   Injunction under Section 105(a)

---

[13]   The Appellees highlight that "unusual circumstances" may be found under either one of two scenarios.  In contrast, the Appellants suggest that both scenarios must be present in order to satisfy the extension of section 362(a) stay to Non-Debtors. Third Circuit case law confirms the Appellee's interpretation is correct.  Thus, "unusual circumstances" exist where at least either: (1) the non-debtor and debtor enjoy such an identify of interests that the suit of the non-debtor is essentially a suit against the debtor; or (2) the third-party action will have an adverse impact on the debtor's ability to accomplish reorganization.  McCartney, 106 F.3d at 509.

_____The final step is the determination of whether the Bankruptcy Court properly exercised its discretion in granting an injunction enjoining suit against the Non-Debtors.  The power of the Court to stay actions against Non-Debtors, pursuant to section 105(a), is clear.[14]  Monroe Well, 67 B.R. at 751 (quoting S.Rep. No. 95-989, 95th Cong., 2d Sess. 51 (1978), reprinted in 1978 U.S. Code Cong. & Ad. News 5787, 5837; H. Rep. No. 95-595, 95th Cong., 1st Sess. 341 (1977) ("House Report"), reprinted in 1978 U.S. Code Cong. & Ad. News 5963, 6298).  Whether, when, and how to exercise this discretion is the essence of the inquiry of this third step.

"'It is frequently observed that a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'"  Mazurek v. Armstrong, 520 U.S. 968, 972 (1997) (quoting 11A Wright, Miller & Kane, Federal Practice and Procedure § 2948 p.129-30 (1995)).  To obtain a preliminary injunction in the Third Circuit, the party seeking the injunction must demonstrate "(1) that they are reasonably

---

[14]    Section 105(a), much like the All Writs Act, formalizes the Court's exercise of its equity power.  See 28 U.S.C. § 1651 ("[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law").

likely to prevail eventually in the litigation and (2) that they
are likely to suffer irreparable injury without relief." Tenafly
Eruv Ass'n, Inc. v. Borough of Tenafly, 309 F.3d 144, 157 (3d
Cir. 2002).  If these two threshold requirements are met, the
Court should then consider "(3) whether an injunction would harm
the [Appellants] more than denying relief would harm the
[Appellees] and (4) whether granting relief would serve the
public interest."  Id.

        Applying these factors in the bankruptcy context, the
Bankruptcy Court found that a preliminary injunction was
warranted.  First, as to the reasonable likelihood of a
successful reorganization plan,[15] the Bankruptcy Court recognized
the speculative nature of this inquiry at this early stage in the
case, but concluded, "nothing has transpired in this case that
would lead [the court] to conclude that the debtor does not have
[a] reasonable likelihood of reorganization."  May 7, 2009, Hr'g
Tr. 102:4-6 (further opining: "while, certainly, matters have
been contested in this case, they have resulted in stipulations
every time they were coming to a head, and I don't . . . have any
evidence before me that would suggest they will not continue to
do that").

_____

        [15]     Reasonable likelihood of success in the bankruptcy
context is equated to the ability to successfully reorganize the
debtors.  See Monroe Well, 67 B.R. at 752-53.

Second, the Bankruptcy Court found that danger of imminent, irreparable harm to the estate or the Debtors' ability to reorganize was present.  The Bankruptcy Court noted that the continuation of the state court action against the Non-Debtors would require involvement of Brian Tierney and Scott Baker, and distract from the reorganization process.  May 7, 2009, Hr'g Tr. 101:1-16 (" . . . I would not like to see the debtor in a position where it did not have the services of its in-house counsel available to oversee the operation of the reorganization").  The Bankruptcy Court concluded that further delay in the reorganization process will constitute irreparable harm and have an adverse effect on the Debtors' reorganization efforts.

Third, the Bankruptcy Court concluded that the balance of the relative harm between Appellants and Appellees tipped in favor of the Appellees.  While the Bankruptcy Court appreciated the harm to the Appellants caused by the delay in the prosecution of the state court defamation action, the Bankruptcy Court noted that the state court action would be stayed for a relatively short period of time.  May 7, 2009, Hr'g Tr. 99:15-23.

Finally, the Bankruptcy Court found that the balance of the public interest in a successful bankruptcy reorganization of the Debtor versus other competing societal interests also tipped

-20-

in favor of the issuance of the injunction.  The Bankruptcy Court properly identified the two public interests implicated: (1) "the public interest in a successful reorganization, particularly of a local institution of some substance and size," May 7, 2009, Hr'g Tr. 100:17-20; and (2) "the constitutional right under Pennsylvania State law with regard to defamation of defendants." May 7, 2009, Hr'g Tr. 100:20-23.  It weighed those interests and concluded that, in light of the relatively short stay on the suits against the Non-Debtors, and the immense importance in a prompt and successful reorganization of the Debtor, the public interest in reorganization prevailed.

On this record, the Court cannot find that the Bankruptcy Court's findings were clearly erroneous.  Therefore, the issuance of the preliminary injunction did not constitute an abuse of discretion.


IV.  CONCLUSION

For the reasons set forth above, the decision of the Bankruptcy Court issuing an injunction enjoining suit against Non-Debtors is AFFIRMED.

An appropriate order follows.